IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD HAMMOND, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:14-cv-2599-BN |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company, N.A., as Trustee of the GSAMP Trust 2006-FM2, Mortgage Pass-Through Certificates, Series 2006-FM2 ("Trustee"), filed a motion to dismiss two of Plaintiffs Ronald Hammond and Annette Hammond's three claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 5. Plaintiffs filed a response, *see* Dkt. No. 6, and Defendants filed a reply, *see* Dkt. No. 9.

For the reasons explained below, Defendants' Partial Motion to Dismiss is granted.

## Background

In 2006, Plaintiffs obtained a home equity loan in the amount of $732,000 (the "Loan") and executed a Texas Home Adjustable Rate Note ("Note") and a Texas Home Equity Security Instrument (the "Security Instrument"). *See* Dkt. No. 1-4 at 4, 19-42. Defendant Ocwen is the loan servicer. *See id.* at 4.

Plaintiffs subsequently experienced financial difficulties and found it challenging to keep up with their financial obligations, including payment of property taxes. *See id.* at 4. Plaintiffs obtained two tax lien loans from Property Tax Solutions, LLC: one in June 2009 for $17,811.00, and one in April 2011 for $22,137.54. *See id.* at 4, 44-51, 53-61.

In February 2012, Defendant Ocwen paid off both of Plaintiffs' tax lien loans. At that time, the principal balances on the two loans totaled $39,948.54. On March 29, 2013, Ocwen adjusted Plaintiffs' escrow account by $35,281.31 and increased Plaintiffs' principal balance by $70,358.39, which increased the amount due under the loan to $710,293.81. Thereafter, Ocwen applied the majority of Plaintiffs' loan payments to the escrow balance and demanded that Plaintiffs pay the tax debt in full. *See id.* at 5, 63.

Property values in Plaintiffs' neighborhood dropped significantly since the home equity loan was originated in 2006. According to Plaintiffs, the Dallas County Appraisal District established the property's market value to be $685,000 in June 2014, and there has been no meaningful change in the property's value between the March 2013 tax lien payoff and June 2014. (Plaintiffs refer to Exhibit G to support the fair market value allegation, but Exhibit G is not attached to the Original Petition or included in the record.) Plaintiffs' calculate 80% of the fair market value to be $548,080. *See id.* at 8.

Plaintiffs originally filed this lawsuit in the 160th District Court of Dallas County, *see id.* at 1, and Defendants removed the action to this Court, *see* Dkt. No. 1. In their Original Petition, Plaintiffs asserted claims for breach of contract, violations

2

of Article XVI of the Texas Constitution, and violations of the Texas Unfair Debt Collection Practices Act. *See id.* In addition to the breach of contract claim, Plaintiffs assert that Ocwen's actions caused the balance of their mortgage to exceed 80% of the market value of their homestead property, in violation of the constitutional cap on home equity loans. *See id.* at 8. They also assert that Ocwen violated the Texas Unfair Debt Collection Practices Act by misrepresenting its right to pay off the tax lien loans and impose the payoff amounts on the principal balance of the mortgage, misrepresenting the amounts paid to cover the tax loans, and unlawfully charging interest and fees related to the tax loan payments. *See id.* at 8-11.

Defendants filed a Rule 12(b)(6) motion to dismiss Plaintiff's claims for violations of the Texas Constitution and Texas Unfair Debt Collection Practices. Defendants assert that Plaintiffs' claim for violation of Article XVI of the Texas Constitution fails as a matter of law because the 80% loan-to-value ratio requirement for home equity loans applies only at origination and that Plaintiffs' claims for violations of the Texas Unfair Debt Collection Practices Act fail as a matter of law because they are barred by the economic loss rule. *See* Dkt. No. 5.

## Legal Standards

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and

3

must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *Se Katrina*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs.*

4

*Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

I.   <u>Plaintiffs failed to state a claim for violation of the Texas Constitution.</u>

Plaintiffs contend that Ocwen violated Article XVI, Section 50(a)(6)(B) of the Texas Constitution by adding the allegedly unauthorized tax lien loan payments to the principal loan balance, which allegedly caused the principal loan balance to exceed 80% of the fair market value of their property. Defendants assert that Plaintiffs'

constitutional claim fails as a matter of law because the 80% loan-to-value ratio requirement only applies at origination.

Section 50(a)(6)(B) requires a home equity loan to be "of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(B). "The phrase 'on the date the extension of credit is made' refers to the date of the original home equity loan and not to each subsequent modification." *Sims v. Carrington Mortg. Servs., LLC*, 889 F. Supp. 2d 883, 890 (N.D. Tex. 2012), *aff'd in part, question certified,* 538 F. App'x 537 (5th Cir. 2013), *certified question answered,* No. 13-0638, 2014 WL 1998397, at *3-*5 (Tex. Oct. 3, 2014); *see also Hawkins v. JPMorgan Chase Bank, N.A.*, No. A-12-CA-892-SS, 2013 WL 443954, at *7 (W.D. Tex. Jan. 29, 2013) (quoting *Sims*).

This case does not involve a loan modification but instead the involuntary imposition of an increased principal balance arising from Defendants' allegedly unauthorized election to pay off Plaintiffs' tax lien loans. In answering a certified question from the United States Court of Appeals for the Fifth Circuit, the Texas Supreme Court focused on whether the transaction was an "extension of credit," not on its characterization as a modification or refinance. *See Sims*, 2014 WL 1998397, at * 3. And, even though the term "extension of credit" is not defined, the Supreme Court explained that "for purposes of Section 50(a)(6) [it] consists not merely of the creation of a principal debt but includes all the terms of the loan transaction," including the

6

requirement that the borrower pay taxes and the lender's right to protect its security. *Id.*

The home equity loan transaction in this case includes the terms of both the Note and the Security Instrument. The Security Instrument required Plaintiffs to pay the "taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property," and, if Plaintiffs failed to do so, the Security Instrument authorized the lender to "do or pay whatever is reasonable or appropriate to protect Lender's interest and/or rights," including "paying any sums secured by a lien which has priority over this Security Instrument." Dkt. No. 1-4 at 23, 26. The tax lien loans obtained by Plaintiffs included liens on the property that were superior to and took priority over Defendants' mortgage lien. *See id.* at 44, 53; TEX. TAX CODE §§ 32.05(b), (b-1) (lien securing a loan for property taxes always has priority over a pre-existing security interest), 32.06 (when taxpayer's ad valorem tax obligations are paid by a third party, the governmental entity's tax lien is transferred to the third-party payer). Therefore, under the terms of the Security Instrument, Defendants were authorized to pay off the tax liens. The Security Instrument also provided that any amounts disbursed to protect Defendants' security interest, such as the tax lien loan payments, "shall become additional debt" secured by the Security Instrument. *See* Dkt. No. 1-4 at 26, ¶ 9.

Defendants' payment of the tax liens and capitalization of the payment amounts was not a "new extension of credit." *Sims,* 2014 WL 1998397, at *3 ("the borrower's obligation for such amounts, and the lender's right to pay them to protect its security,

were all terms of the original extension of credit"). "If the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do not apply." *Id.*

Regardless of whether Defendants' were in breach of contract concerning the manner in which they capitalized the tax lien loan payments, they did not trigger Section 50(a)(6)(B)'s 80% loan-to-value requirement by making those payments and subsequently requiring repayment from Plaintiffs. Accordingly, Plaintiffs' claims for violations of the Texas Constitution are dismissed with prejudice.

B.   <u>Plaintiffs' TDCA claims are barred by the economic loss rule.</u>

Defendants assert that Plaintiffs' claims for violations of the Texas Unfair Debt Collection Practices Act ("TDCA") are barred by the economic loss rule because they arise from conduct governed by the Note and Security Instrument. *See* Dkt. No. 5 at 5-7. "In Texas, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex.2007)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *Id.* (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting

*Lamar Homes, Inc.*, 242 S.W.3d at 13). "The focus of the rule is on determining whether the injury is to the subject of the contract itself." *Id.* (internal quotation marks omitted). The burden is on the plaintiff to establish evidence of an independent injury. *See id.* (citing *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App. – Dallas 2009, no pet.)).

District courts within the Fifth Circuit have applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See Hernandez v. U.S. Bank, N.A.*, No. 3:13-cv-2164-O, 2013 WL 6840022, at *10 (N.D. Tex. Dec. 27, 2013) (applying economic loss doctrine to allegations that defendants misrepresented the character and extent of plaintiffs' mortgage loan and sought other unauthorized charges); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K, 2013 WL 705110, at *12 (N.D. Tex. Feb.4, 2013), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb.26, 2013) (applying economic loss doctrine to dismiss claims under Texas Finance Code §§ 392.204(a)(8) & (19)).

Plaintiffs' allege that Defendants violated the TDCA by misrepresenting their right to pay off Plaintiff's tax lien loans and impose the payoff amounts on the principal mortgage balance, misrepresenting the payoff amounts of the two tax lien loans, and unlawfully charging interest and fees related to the tax loan payments. *See* Dkt. No. 1-4 at 9-11. All of those claims arise under the Note and Security Instrument and are barred by the economic loss doctrine. *Cf. Hutchison v. Bank of Am., N.A.*, No. H-12-3422, 2013 WL 5657822, at *7 (S.D. Tex. Oct.16, 2013), *aff'd*, 575 F. App'x 443, 444 (5th

Cir. 2014) ("we agree totally with the reasoning and results set forth by the district court in its Memorandum Opinion & Order"). Accordingly, Plaintiffs' claims for violations of the Texas Unfair Debt Collection Practices Act are dismissed with prejudice.

## Conclusion

Defendants' Partial Motion to Dismiss [Dkt. No. 5] is GRANTED, and Plaintiffs' claims for violations of the Texas Constitution and Texas Unfair Debt Collection Practices Act are dismissed with prejudice.

DATED: October 20, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE